Case 2:14-cv-00482-SJF-GRB Document 52 Filed 11/15/16 Page 1 of 12 PageID #: 940

**FILED**
**CLERK**

11/15/2016

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ROSE D'ANGELO, as Administratrix of the
Estate of Nicholas D'Angelo,

                              Plaintiff,

    -against-

UNITED STATES OF AMERICA,

                              Defendant.
----------------------------------------------------------X

**OPINION AND ORDER**
14-cv-482 (SJF)(GRB)

**FEUERSTEIN, District Judge:**

      Plaintiff Rose D'Angelo, as Administratrix of the Estate of Nicholas D'Angelo ("Plaintiff" or "D'Angelo"), commenced this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, seeking to recover damages arising out of the death of her son, Nicholas D'Angelo ("Decedent" or "Nicholas"). *See* Docket Entry ("DE") [1]. Presently before the Court is Defendant United States of America's ("Defendant" or "United States") motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), which Plaintiff opposes. DE [47]. For the reasons set forth herein, Defendant's motion is granted.

**I. BACKGROUND**

      Unless otherwise noted, the following facts are drawn from the Amended Complaint and are accepted as true for purposes of the instant motion.

      **A. Factual Background**

      Nicholas was a veteran of the United States Air National Guard. *See* Am. Compl., DE [26], ¶ 12. From the time he was honorably discharged from the National Guard on December 10, 2003 until February 2010, Decedent treated at the Veterans Affairs Medical Center located at 79 Middleville Road, Northport, New York (the "Northport VAMC"). *Id.* at ¶16. The Northport VAMC is an agency of the United States that "held itself out . . . as a provider of quality health

1

care services, with the expertise necessary to maintaining the health and safety of [its] patients . . . ." *Id.* at ¶¶ 13, 15.

On February 1, 2010, Decedent sought medical treatment at the Northport VAMC for a cough, fever, and shortness of breath. *Id.* at ¶ 19. Decedent was diagnosed with right sided pneumonia and prescribed four hundred (400) milligrams of Avelox, an antibiotic used to treat bacterial infections. *Id.* at ¶ 20. Upon completion of the Avelox prescription, Decedent returned to the Northport VAMC on February 24, 2010 with a facial rash, chest rash, lesions in his mouth, abdominal pain, and muscle pain. *Id.* at ¶¶ 21, 22. On February 25, 2010, Nicholas was admitted to the Northport VAMC due to an adverse drug reaction to Avelox. *Id.* at ¶ 23.

On February 28, 2010, while visiting Decedent at the Northport VAMC, Plaintiff notified two (2) nurses that Nicholas had labored, shallow breathing. *Id.* at ¶ 24. At approximately 3:15 p.m., a "code blue" was called, and at approximately 3:19 p.m., the code blue began. *Id.* at ¶ 26. Decedent was pronounced dead at approximately 4:03 p.m. *Id.* at ¶ 27.

B. **Procedural Background**

On July 29, 2011, Plaintiff served a notice of claim on the Department of Veterans Affairs, Office of Regional Counsel (the "DVA"). *Id.* at ¶ 4. On November 9, 2011, the Surrogate of Suffolk County appointed Plaintiff as Administratrix of Decedent's estate. *Id.* at ¶ 11. On November 17, 2011, the DVA requested that Plaintiff resubmit her notice of claim because she had not been appointed Administratrix of Decedent's estate at the time of her July 29, 2011 notice of claim. *Id.* at ¶ 5. Plaintiff resubmitted the notice of claim on November 30, 2011 (the "Notice of Claim"). *Id.* at ¶ 6. In the Notice of Claim, Plaintiff wrote:

> It is claimed that the death of Nicholas A. D'Angelo was caused due to the negligence and carelessness of the Department of Veterans Affairs in the treatment of the deceased; in failing to respond to the complaints and symptoms presented; in failing to prescribe proper and adequate testing; in failing to properly diagnose the

decedent's condition; in failing to respond timely to decedent's symptoms, resulting in his death. The cause of death was cardiopulmonary arrest – respiratory failure.

*Id.* Plaintiff claimed a total of ten million dollars ($10,000,000.00) in damages, including five million dollars ($5,000,000.00) for personal injury to Decedent and five million dollars ($5,000,000.00) for his wrongful death. *Id.*

On July 23, 2013, Plaintiff received a Notice of Final Denial from the DVA. *Id.* at ¶ 7. The DVA wrote that its "review revealed no evidence of any negligent or wrongful act or omission on the part of a Department of Veterans Affairs (VA) employee acting within the scope of his or her employment that resulted in the death of Nicholas D'Angelo at the Northport VAMC in February 2010." *Id.* at Ex. 1. The DVA advised Plaintiff of her right to seek relief in the district court pursuant to the FTCA, but that any such action must be commenced within six (6) months of the date of the DVA's Notice of Final Denial. *Id.*

By way of a *pro se* Complaint dated January 22, 2014, Plaintiff commenced this action pursuant to the FTCA, alleging, *inter alia*, that the United States, the Northport VAMC, and Dr. Qioa Guo, failed to treat Decedent's symptoms, failed to consult with a dermatologist, and failed to recognize allergic reactions to medications. DE [1]. On April 24, 2014, the United States requested that Plaintiff be granted sixty (60) days to retain counsel because "representative parties, such as guardians, executors and administrators, are generally forbidden from appearing *pro se*."[1] DE [8]. Plaintiff subsequently retained counsel and filed an Amended Complaint. DE [21], [26].

In her June 15, 2015 Amended Complaint, Plaintiff withdrew her claims against the Northport VAMC and Dr. Qioa Guo, and asserted claims against the United States for: (i) medical malpractice; (ii) wrongful death; (iii) lack of informed consent; and (iv) vicarious liability,

---

[1] On June 18, 2014, this action was administratively closed with leave to reopen to allow Plaintiff to attend to medical issues. DE [15]. This action was restored to the Court's calendar on April 22, 2015. DE [23].

3

*respondeat superior*, and agency. Am. Compl. ¶¶ 28-58. Relevant here, in her medical malpractice claim, Plaintiff alleges that Defendant is liable for, *inter alia*, "negligently and improperly ordering and/or administering medication" and "negligently and improperly ordering and/or administering contraindicated medications." *Id.* at ¶ 28. On September 10, 2015, Defendant filed a motion to dismiss Plaintiff's claims for lack of informed consent and vicarious liability, *respondeat superior*, and agency on the ground that Plaintiff had failed to exhaust her administrative remedies with respect to those claims. DE [32], [33]. At a November 9, 2015 status conference, Plaintiff withdrew her claim for lack of informed consent, and the Court granted Defendant's motion to dismiss Plaintiff's claim for vicarious liability, *respondeat superior*, and agency. DE [36].

On April 7, 2016, Defendant filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). DE [47]. According to Defendant, this Court lacks subject matter jurisdiction over Plaintiff's "claim that Defendant's negligent prescription/administration of drugs caused the death of [Decedent] because such was not administratively exhausted." *See* Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Overprescription Claim Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) ("Def.'s Mem."), DE [48], at 1. In opposition, Plaintiff argues, *inter alia*, that the instant motion is untimely, as "Fed. R. Civ. P. 12(b) requires that Motions to Dismiss based on § 12(b)(1) to be made **before** a responsive pleading is served." *See* Declaration in Opposition and Memorandum of Law ("Pl.'s Opp'n"), DE [50-2], ¶ 62 (emphasis in original). Plaintiff further argues that the Notice of Claim provided sufficient information, and that even if it did not, she "was unaware of what specific medication were [*sic*] prescribed before the Decedent's death due to the Defendant's intentional concealment and delay in providing the medical records . . . ." *Id.* at ¶ 1.

4

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Pinchasow v. United States*, 408 F. Supp. 2d 138, 141 (E.D.N.Y. 2006); *see also Manway Constr. Co., Inc. v. Hous. Auth. of City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) (holding that where a court lacks subject matter jurisdiction, "dismissal is mandatory"). On a motion to dismiss for lack of subject matter jurisdiction, "the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question." *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003). The party advocating for subject matter jurisdiction "must show by a preponderance of the evidence that subject matter jurisdiction exists." *Lifrak v. New York City Council*, 389 F. Supp. 2d 500, 502 (S.D.N.Y. 2005).

## III.  DISCUSSION

Applying these standards, and for the reasons set forth herein, Defendant's motion is granted.

### A. Defendant's Motion is Timely

As an initial matter, Plaintiff argues that Defendant's motion should be denied as untimely. Pl.'s Opp'n ¶¶ 62-68. According to Plaintiff, as "Defendant did not move to dismiss based on subject matter jurisdiction before Defendant answered" the Amended Complaint, it has "waived its right to make a Motion to Dismiss based on subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." *Id.* at ¶ 63. However, the court has "an independent obligation to examine its subject-matter jurisdiction at all successive stages of litigation." *Abramov v. I.C. Sys., Inc.*, 65 F. Supp. 3d 323, 325 (E.D.N.Y. 2014). It is well-settled that, "[i]ssues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*." *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008); *see also United Nat'l Ins. Co.*

5

*v. Waterfront N.Y. Realty Corp.*, 907 F. Supp. 663, 667 (S.D.N.Y. 1995) ("Challenge to a court's subject matter jurisdiction may be raised at any time during the litigation."). Therefore, Defendant's motion is timely.

### B. Federal Tort Claims Act Standard

The doctrine of sovereign immunity is a jurisdictional bar which, "[a]bsent a waiver, . . . shields the federal government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260, 119 S. Ct. 687, 690 (1999). However, "[t]he FTCA contains an express waiver of the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Morrow v. Dupont*, No. 08-CV-3083, 2010 WL 1005856, at *2 (E.D.N.Y. Mar. 15, 2010); *see also Richards v. United States*, 369 U.S. 1, 6, 82 S. Ct. 585, 590 (1962) (observing that the FTCA "remove[s] the sovereign immunity of the United States from suits in tort and, with certain exceptions, . . . render[s] the Government liable in tort as a private individual would be under like circumstances"). Therefore, the FTCA allows for

> claims against the United States, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Pursuant to 28 U.S.C. § 2675, "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The FTCA's presentment requirement "demand[s] that the plaintiff provide the Federal agency with (1) notice of his claim sufficient to enable the agency to investigate, and (2) a sum certain for his claim." *State Farm Mut. Auto. Ins. Co. v. United States*, 326 F. Supp. 2d 407, 412 (E.D.N.Y. 2004). The Second Circuit has held that "a Notice of Claim

6

filed pursuant to the FTCA must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth." *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998); *see also Schunk v. United States*, 783 F. Supp. 72, 81 (S.D.N.Y. 1992) ("The notice of claim must present facts sufficient to permit an investigation and settlement of the claim."). The FTCA's presentment requirement "is jurisdictional and cannot be waived." *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). Therefore, a "failure to satisfy the FTCA's presentment requirement precludes subsequent litigation of those claims." *Donahue v. United States*, 457 F. Supp. 2d 137, 141 (E.D.N.Y. 2006). The claimant bears the burden of both pleading and proving compliance with the statutory requirements under the FTCA. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987).

D'Angelo's Notice of Claim fails to satisfy the FTCA's presentment requirement with respect to Plaintiff's claim that the negligent or improper administration of medication contributed to Decedent's death. The Notice of Claim makes no reference to medication, or the negligent administration thereof, as being a contributing factor to Decedent's death. *See* Notice of Claim, DE [50-5], § 10. Rather, the Notice of Claim states that Defendant was negligent and careless "in failing to respond to the complaints and symptoms presented; in failing to prescribe proper and adequate testing; in failing to properly diagnose the decedent's condition; [and] in failing to respond timely to decedent's symptoms, resulting in his death." *Id.* These allegations are insufficient to alert Defendant of Plaintiff's theory that the negligent administration of medication contributed to Decedent's death. *See, e.g., Schunk*, 783 F. Supp. at 81 (holding that a notice of claim only referencing the over-prescription of Tylox failed to satisfy the FTCA's presentment requirement with respect to negligence "arising from prescriptions other than Tylox"); *see also Tamares v. United States*, No. 07 Civ. 688, 2009 WL 691002, at *4 (S.D.N.Y. Mar. 17, 2009)

("[A] claimant's burden is not met just because the agency would be able to gather the relevant information itself."). Therefore, Plaintiff's Notice of Claim fails to satisfy the FTCA's presentment requirement.

Relying upon *Byrne v. United States*, 804 F. Supp. 577 (S.D.N.Y. 1992), Plaintiff argues that the Notice of Claim satisfies the FTCA's presentment requirement because she "has given more than minimal notice and . . . included a value to allow the Government to assess the claim." Pl.'s Opp'n ¶¶ 80, 81. According to Plaintiff, she "specifically alleged that the claims of negligence and/or medical malpractice are based on the failure to recognize labored breathing, shallow breathing, respiratory suppression/distress and ultimately respiratory arrest." *Id.* at ¶ 81. In *Byrne*, the court examined whether the plaintiff established subject matter jurisdiction where his notice of claim was timely pursuant to 28 U.S.C. § 2675(a), but was deficient pursuant to 28 C.F.R. § 14.2 "because it failed to present evidence of plaintiff's authority to present the claim." 804 F. Supp. at 579; *see also* 28 C.F.R. § 14.2(a) (requiring that a notice of claim be "accompanied by evidence of . . . authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative"). The court held that strict compliance with 28 C.F.R. § 14.2 is not a jurisdictional requirement, but that a notice of a claim must "provide minimal notice that (1) gives the agency written notice of [the] claim sufficient to enable the agency to investigate and (2) places a value on [the] claim." *Byrne*, 804 F. Supp. at 579 (internal quotation omitted). Unlike the notice of claim at issue in *Byrne*, which "provided the government with the minimal notice required under the FTCA so that it could adequately investigate the claim," *id.* at 582, as discussed above, Plaintiff's Notice of Claim provided no information that would allow the government to investigate Plaintiff's current theory that the negligent or careless

8

administration of medication contributed to Decedent's death. Therefore, the Notice of Claim failed to satisfy even "the minimal requirements of 28 U.S.C. § 2675(a)." *Id.*

Plaintiff further argues that, even if the FTCA requires greater specificity, she "could not do so in 2011 when the Notice of Claim was filed" because she "did not have the necessary information available despite having requested a complete set of records from the Defendant on the date of Decedent's death." Pl.'s Opp'n ¶ 84. According to Plaintiff, "[t]he only documents that show what medications were administered were not provided by the Defendant until July 2015." *Id.* However, on approximately March 4, 2010, Plaintiff received medical records from the DVA indicating, *inter alia*, that Zofran was administered on February 28, 2010, and that Decedent was prescribed Fentanyl and Oxycodone (the "DVA Records"). *Id.* at Ex. F; Supplemental Declaration of Robert Schumacher ("Schumacher Decl."), DE [51], at Ex. D. According to Plaintiff, "the excessive administration of Oxycodone, coupled with the administration of Fentanyl and Zofran created a synergistic effect that caused respiratory suppression/distress, and ultimately respiratory arrest." *Id.* at ¶ 28. As the DVA Records reveal that Fentanyl, Oxycodone, and Zofran were administered prior to Decedent's death, Plaintiff's argument that she did not know the "underlying medications that caused the over-medication . . . until Defendant provided the necessary medication administration records in July 2015" lacks merit. *Id.* at ¶ 86. Equally unavailing is Plaintiff's claim that she "was not aware of an over-medication until receiving records in September 2014 indicating Narcan was administered," *see id.*, as the DVA Records reveal that Narcan was administered during the course of Decedent's code blue on February 28, 2010. *See* Schumacher Decl. Exs. E, F. Therefore, Plaintiff possessed

9

sufficient information to satisfy the FTCA's presentment requirement with respect to her theory that the negligent or careless administration of medication contributed to Decedent's death.[2]

Based on the foregoing, Plaintiff's claims that the negligent or careless administration of medication contributed to Decedent's death were not properly presented in the Notice of Claim, and this Court therefore lacks subject matter jurisdiction to adjudicate any such claims.

## C. Equitable Tolling

Finally, Plaintiff argues that, "[i]n the interest of fairness, equitable tolling should be applied to the facts of this case." Pl.'s Opp'n ¶ 72. Although the doctrine of equitable tolling "permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity," *United States v. All Funds Distributed to, or o/b/o, Weiss*, 345 F.3d 49, 54 (2d Cir. 2003), Defendant does not seek dismissal of the Amended Complaint on timeliness grounds. *See* Def.'s Mem. at 10-14. Nevertheless, the Court interprets Plaintiff's argument to suggest that the FTCA's two (2)-year statute of limitations to present a notice of claim should be tolled so that she may file an amended notice of claim. The Court disagrees.

Pursuant to 28 U.S.C. § 2401, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b). Under the FTCA, a claim "accrues on the date that a plaintiff discovers that he has been injured." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 177 (2d Cir. 2008). However, "accrual of a medical malpractice claim 'may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause.'" *Torres v. United States*, 612 F. App'x 37, 40 (2d Cir. 2015)

---

[2] Even accepting as true Plaintiff's argument that she was unaware of the specific medications Decedent received prior to his death, as the Notice of Claim makes no reference to medication being a contributing factor to Decedent's death, it still fails to satisfy the FTCA's presentment requirement. *See Schunk*, 783 F. Supp. at 81.

10

(quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)). The Second Circuit has observed that a claim under the FTCA accrues when the plaintiff "knows, or should know, enough to protect himself by seeking legal advice." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 142 (2d Cir. 2011) (internal quotation omitted). The doctrine of equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations 'if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" *Valdez*, 518 F.3d at 182 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (2d Cir. 1990)); *see also Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 482 (E.D.N.Y. 2011) ("The doctrine of equitable tolling applies where [the] defendant's fraudulent conduct results in [the] plaintiff's lack of knowledge of a cause of action."). However, "equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s].'" *A.Q.C.*, 656 F.3d at 144 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Plaintiff's medical malpractice claim accrued, at the latest, on March 4, 2010, when she received the DVA Records. As discussed above, the DVA Records reveal that, on February 28, 2010, Plaintiff was prescribed, *inter alia*, Oxycodone and Fentanyl, and that Zofran was administered during the course of his code blue. Pl.'s Opp'n Ex. F. The DVA Records further reveal that Narcan was administered during Decedent's code blue. *Id.* Plaintiff acknowledges that "Narcan is an opiate antidote used to reverse the effects of an opiate overdose." *Id.* at ¶ 26. These facts would "lead a reasonable person . . . to consult a lawyer to investigate whether the . . . condition was caused by inadequate medical care . . . ." *Torres*, 612 F. App'x at 40. The fact that Plaintiff was not specifically "advised that this treatment was a departure from prevailing medical standards" does not preclude a finding that Plaintiff's claims accrued on March 4, 2010. *Valdez*, 518 F.3d at 177 (citing *United States v. Kubrick*, 444 U.S. 111, 115, 100 S. Ct. 352, 360 (1979)).

Additionally, as Plaintiff actually possessed "vital information bearing on the existence of [her] claim," *Cada*, 920 F.2d at 451, prior to the expiration of the FTCA's two (2)-year statute of limitations, she is not entitled to equitable tolling. *See Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 528 (S.D.N.Y. 2015) (holding that the plaintiff was not entitled to equitable tolling where he had actual knowledge of his legal rights).

Based on the foregoing, the FTCA's two (2)-year statute of limitations to file a notice of claim expired no later than March 5, 2012, and an amended notice of claim would be untimely. Therefore, Plaintiff's claim that the negligent or careless administration of medication contributed to Decedent's death is dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss is granted.

Dated: Central Islip, New York
      November 15, 2016

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge